## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **MICHAEL DELLARIA,** | : | **CIVIL ACTION NO. 1:21-CV-1718** |
| | : | |
| **Plaintiff** | : | **(Judge Conner)** |
| | : | |
| **v.** | : | |
| | : | |
| **HERSHEY MEDICAL CENTER**, *et al.*, | : | |
| | : | |
| **Defendants** | : | |

## <u>MEMORANDUM</u>

This is a prisoner civil rights case under 42 U.S.C. § 1983 in which plaintiff Michael Dellaria, an inmate in the State Correctional Institution-Camp Hill ("SCI-Camp Hill"), alleges that defendants were deliberately indifferent to a serious medical need and committed malpractice. Dellaria claims that the defendants failed to diagnose a cyst in his eye and the cyst subsequently burst. Defendants have moved to dismiss.

## I.    <u>Factual Background & Procedural History</u>

Dellaria initiated this case through the filing of a complaint on October 4, 2021, which the court received and docketed on October 7, 2021. (Doc. 1). Dellaria amended his complaint on November 5, 2021.[1] (Doc. 9). According to the amended complaint, Dellaria started seeing "little black spots" in his field of vision in March 2018, which led him to seek medical care in the prison infirmary. (<u>Id.</u> at 3). He

---

[1] Federal Rule of Civil Procedure 15(a)(1)(A) allows a plaintiff to amend once as a matter of course within 21 days after serving the complaint. Defendants had not yet been served with plaintiff's original complaint at the time he filed the amended complaint, so amendment was proper under Rule 15(a)(1)(A).

spoke about the issue with members of the prison's staff, who allegedly told him that the spots were "floaters" that would go away. (Id.)

Shortly after he began seeing the black spots, Dellaria's vision in his left eye became "distorted to the point where it was hard for him to see at all." (Id.) Dellaria revisited his concerns with prison medical staff who allegedly reiterated that the black spots were "floaters that were caused by the eye shedding old skin much like a snake that would eventually go away." (Id.) Later the same day, Dellaria developed "extreme pain" and asked his housing unit sergeant for immediate help. (Id.) The sergeant called the medical department, which added him to the list to be seen by medical personnel later that day. (Id.) Upon examination, a physician's assistant in the prison speculated that Dellaria may have had a detached retina. (Id. at 4). The physician's assistant referred him to the prison optometrist, Dr. Bryden. (Id.) Dellaria saw Bryden for an initial visit approximately one week later, during which Bryden diagnosed a detached retina in Dellaria's left eye. (Id.) Bryden recommended that Dellaria be seen by an ophthalmologist. (Id.)

The amended complaint alleges that "some time went by" before Dellaria was taken to Hershey Medical Center, where he was seen by an ophthalmologist, Dr. Kimberley Neely, on April 5, 2018. (Id.) Neely allegedly concluded that surgery was necessary to correct Dellaria's detached retina. (Id.) Neely performed the surgery on April 5, 2018, reattaching the retina and injecting gas to stabilize the retina. (Id.) Dellaria was kept at Hershey Medical Center until April 7, 2018, at

which point he was returned to SCI-Camp Hill. (Id.) Neely prescribed several medications to Dellaria following surgery. (Id. at 4-5).

Dellaria had a follow-up visit with Neely and another doctor, Seth Pantanelli, on June 13, 2018. (Id. at 5). Pantanelli is a cornea specialist. (Id.) The doctors allegedly told Dellaria that trauma caused by the surgery had caused a cataract to develop in his left eye. (Id.) He was subsequently taken back to Hershey Medical Center on July 13, 2018 for a "double surgery," in which Neely removed the gas from the previous surgery, Pantanelli removed the cataract, and Pantanelli performed an intraocular lens implant. (Id.) Dellaria stayed overnight and was returned to SCI-Camp Hill on July 14, 2018. (Id.) Several medications were again prescribed for Dellaria following surgery. (Id.) Dellaria was scheduled for follow-up visits on July 23, 2018, and August 6, 2018, but both visits were allegedly cancelled due to a scheduling error and the lack of available correctional officers, respectively. (Id.) Dellaria continued to experience vision problems following the second surgery. (Id. at 6-7).

Dellaria allegedly sought medical care through sick call requests to the prison medical staff on August 7, 2018 and August 10, 2018. (Id. at 7-8). The prison's health care administrator, Beth Herb, purportedly failed to respond to these requests. (Id. at 8). At this time, Dellaria was allegedly experiencing redness and irritation in his eye, severe headaches and trauma, tenderness in his eye, jabs of pain with "white flashes," physical imbalance, distorted vision, and anxiety. (Id.)

On August 24, 2018, Dellaria saw Pantanelli for a follow-up visit. (Id. at 9). Pantanelli allegedly gave him an "eye pressure test," and Dellaria's results on the

3

test were "mediocre." (Id.)  Pantanelli allegedly concluded that Dellaria's implant was properly placed and aligned. (Id.)  Dellaria asked Pantanelli why he continued to experience problems with his eye, and Pantanelli allegedly told him that he would need to ask Neely about this because she was the primary physician assigned to him. (Id.)  Dellaria was seen again by Bryden on August 28, 2018. (Id.)  Bryden allegedly prescribed eye drops to ease the mucus buildup in Dellaria's eye and an antibiotic that was used to treat bacterial infections. (Id.)

Dellaria attended a follow-up visit with Neely on September 11, 2018.  Neely allegedly conducted a pressure test on the eye and concluded that everything looked good. (Id. at 10).  Neely also allegedly concluded, contrary to Bryden's conclusion, that Dellaria did not have an infection in his eye and advised him to stop taking the prescribed antibiotic. (Id.)  Neely prescribed eye drops to treat the swelling in his eye and then sent him to another area of the hospital to have images taken of the eye. (Id. at 11).  Upon reviewing the images, Neely allegedly noted that a "dark spot" was showing up on images of the retina. (Id.)  Neely purportedly stated that the dark spot was a cyst. (Id.)  Neely stated that she was not sure whether the cyst would continue to grow and did not reply to Dellaria's question as to whether the cyst was present at the time of his first surgery. (Id.)  Neely also allegedly said that she was not sure whether Dellaria would ever regain full vision in his eye. (Id.)  Neely recommended another visit with Bryden so that Dellaria could be prescribed a new set of glasses and scheduled Dellaria for a follow-up visit four to six weeks later. (Id. at 14).

Dellaria saw Bryden on September 26, 2018.  (<u>Id.</u> at 17).  Bryden allegedly concluded that new glasses would not solve the problem, that the cyst in Dellaria's eye was likely contributing to the problems Dellaria was experiencing, and that Dellaria's vision would not improve until something was done to repair the damage in Dellaria's retina.  (<u>Id.</u>)  Bryden allegedly re-prescribed the antibiotic that Neely had discontinued.  (<u>Id.</u>)

Dellaria was taken back to Hershey Medical Center on October 16, 2018, for further tests on his eye.  (<u>Id.</u> at 19).  Neely, after conducting the tests, allegedly said that everything looked good, but also stated that images of Dellaria's eye revealed the presence of a "blind spot" and a cyst.  (<u>Id.</u>)  Neely allegedly said that the cyst might get bigger, but that she was not certain that it would.  (<u>Id.</u>) Neely again prescribed eye drops, but otherwise advised that they just needed to wait and see whether the problems in Dellaria's eye would resolve on their own.  (<u>Id.</u>)

Sometime after this visit, the cyst in Neely's left eye allegedly burst, which caused a macular hole in the eye.[2]  (<u>Id.</u> at 23).  Neely saw Dellaria again on April 23, 2019, during which she concluded that the cyst had burst and diagnosed the existence of the macular hole.  (<u>Id.</u>)  Neely allegedly told Dellaria that she was unsure whether Dellaria would ever regain the vision in his eye.  (<u>Id.</u>)  Dellaria asked Neely why the cyst was not removed during his initial surgery, and Neely

---

[2] The court takes judicial notice that a macular hole is "a small break in the macula, located in the center of the . . . retina." *Macular Hole*, NATIONAL INSTITUTES OF HEALTH, https://www.nei.nih.gov/learn-about-eye-health/eye-conditions-and-diseases/macular-hole (last visited June 1, 2022).

allegedly stated, "I was hoping the eye drops would have corrected it." (Id.) Dellaria claims that this was the first admission by Neely that the cyst had been present during the initial surgery and that Neely had been refusing to confirm whether this was the case at all previous visits. (Id.) Dellaria did not attend any appointments at Hershey Medical Center after April 23, 2019, due to the COVID-19 pandemic. (Id.) Hershey Medical Center allegedly has not scheduled any follow-up visits with Dellaria in the time since the pandemic "calmed down." (Id.) Dellaria does not allege that he has attempted to get a follow-up appointment scheduled in that time through a request to prison staff or any other method. (See id.)

The amended complaint names Neely, Pantanelli, Bryden, and Hershey Medical Center as defendants, along with several defendants who were allegedly involved in the review of Dellaria's grievances relating to his medical care, including Herb, the Pennsylvania Department of Corrections, John Wetzel, Laurel Harry, Dorina Varner, Tonya Heist, and Patricia Bitting. (Id. at 2-3.) Dellaria raises a claim for deliberate indifference in violation of the Eighth Amendment and a state law claim for medical malpractice. (Id. at 25.) He seeks declaratory relief, injunctive relief, and damages from the defendants. (Id. at 26.) We dismissed the claims against the Department of Corrections with prejudice on November 5, 2021, but otherwise directed the Clerk of Court to serve defendants with copies of the amended complaint. (Doc. 10.)

Defendants Neely, Pantanelli, and Hershey Medical Center ("Medical Defendants") moved to dismiss the amended complaint on January 4, 2022. (Doc. 18). Defendants Wetzel, Harry, Varner, Herb, Heist, and Bitting ("DOC

Defendants") filed a separate motion to dismiss on the same day.  (Doc. 19).

Briefing on the motions is complete, and they are ripe for disposition.  (See Docs.

20-21, 25, 26, 30, 31, 32).[3]  Defendant Bryden has not been served and accordingly

has not responded to the amended complaint.

## II.    **Legal Standard**

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for the

dismissal of complaints that fail to state a claim upon which relief may be granted.

FED. R. CIV. P. 12(b)(6).  When ruling on a motion to dismiss under Rule 12(b)(6), the

court must "accept all factual allegations as true, construe the complaint in the light

most favorable to the plaintiff, and determine whether, under any reasonable

reading of the complaint, the plaintiff may be entitled to relief."  Phillips v. County

of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008) (quoting Pinker v. Roche Holdings,

Ltd., 292 F.3d 361, 374 n.7 (3d Cir. 2002)).  In addition to reviewing the facts

contained in the complaint, the court may also consider "exhibits attached to the

complaint, matters of public record, [and] undisputedly authentic documents if the

complainant's claims are based upon these documents."  Mayer v. Belichick, 605

F.3d 223, 230 (3d Cir. 2010) (citing Pension Benefit Guar. Corp. v. White Consol.

Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993)).

---

[3] We note that Dellaria filed sur reply briefs without leave of the court as
required by Local Rule 7.7.  (See Docs. 31-32).  We have considered the arguments
raised in these briefs despite their procedural impropriety given Dellaria's status as
a *pro se* litigant.

Federal notice and pleading rules require the complaint to provide "the defendant fair notice of what the . . . claim is and the grounds upon which it rests." Phillips, 515 F.3d at 232 (alteration in original) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)).  To test the sufficiency of the complaint, the court conducts a three-step inquiry.  See Santiago v. Warminster Township, 629 F.3d 121, 130-31 (3d Cir. 2010).  In the first step, "the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.'"  Id. at 130 (alteration in original) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 675 (2009)).  Next, the factual and legal elements of a claim must be separated; well-pleaded facts are accepted as true, while mere legal conclusions may be disregarded.  Id. at 131-32; see Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009).  Once the court isolates the well-pleaded factual allegations, it must determine whether they are sufficient to show a "plausible claim for relief."  Iqbal, 556 U.S. at 679 (citing Twombly, 550 U.S. at 556); Twombly, 550 U.S. at 556.  A claim is facially plausible when the plaintiff pleads facts "that allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Iqbal, 556 U.S. at 678.

Courts must liberally construe complaints brought by *pro se* litigants.  Sause v. Bauer, 585 U.S. __, 138 S. Ct. 2561, 2563 (2018).  *Pro se* complaints, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers."  Erickson v. Pardus, 551 U.S. 89, 94 (2007) (quoting Estelle v. Gamble, 429 U.S. 97, 106 (1976)).

### III.   **Discussion**

Dellaria brings his constitutional claims under 42 U.S.C. § 1983.  Section 1983 creates a private cause of action to redress constitutional wrongs committed by state officials.  42 U.S.C. § 1983.  The statute is not a source of substantive rights, but serves as a mechanism for vindicating rights otherwise protected by federal law. See Gonzaga Univ. v. Doe, 536 U.S. 273, 284-85 (2002); Kneipp v. Tedder, 95 F.3d 1199, 1204 (3d Cir. 1996).  To state a Section 1983 claim, plaintiffs must show a deprivation of a "right secured by the Constitution and the laws of the United States . . . by a person acting under color of state law."  Kneipp, 95 F.3d at 1204 (quoting Mark v. Borough of Hatboro, 51 F.3d 1137, 1141 (3d Cir. 1995)).

Medical Defendants assert that Dellaria's claims against them should be dismissed because they are barred by the applicable statute of limitations and because they fail to state a claim upon which relief may be granted.  (Doc. 21). Medical Defendants also assert that the malpractice claim should be dismissed because Dellaria has failed to file a certificate of merit with respect to that claim as required by the Pennsylvania Rules of Civil Procedure.  (Id.)  Alternatively, Medical Defendants request that upon dismissal of the federal claim the court decline to exercise jurisdiction over Dellaria's state law claim.  (Id.)  Finally, Medical Defendants seek to strike several portions of the amended complaint that they assert are improper or impertinent.  (Id.)  DOC Defendants seek dismissal of the amended complaint for failure to state a claim upon which relief may be granted because they were not personally involved in the alleged violations of Dellaria's

rights and because Dellaria has failed to allege deliberate indifference.  (Doc. 20).

We will address the arguments for dismissal *seriatim*.

### A.  Dellaria's Malpractice Claim Will Not Be Dismissed for Failure to File a Certificate of Merit

We first consider Medical Defendants' argument that the malpractice claim

should be dismissed because Dellaria did not timely file a certificate of merit.

Under Pennsylvania Rule of Civil Procedure 1042.3, a plaintiff must file a certificate

of merit in any case in which the plaintiff alleges that "a licensed professional

deviated from an acceptable professional standard" within sixty days after filing the

complaint.  PA. R. CIV. P. 1042.3.  Here, Dellaria filed his complaint on October 4,

2021, so he was required to file a certificate of merit no later than December 3, 2021.

Dellaria did not file a certificate of merit until March 15, 2022, when he attached a

certificate to his brief opposing the motions to dismiss.  (See Doc. 25 at 26).  Medical

Defendants accordingly seek dismissal of the claim based on Dellaria's failure to

timely file a certificate of merit.

We are constrained to deny Medical Defendants' argument because they

have not complied with the notice requirements for dismissing a case based on the

lack of a certificate of merit.  Under Pennsylvania Rule of Civil Procedure 1042.7,

defendants may not seek dismissal of a malpractice claim based on the lack of a

certificate of merit unless the defendants have provided thirty days' notice prior to

seeking dismissal.  PA. R. CIV. P. 1042.7(a)(4); see also Schmigel v. Uchal, 800 F.3d

113, 124 (3d Cir. 2015) ("The condition of thirty days' notice prior to seeking

dismissal of an action for failure to comply with the COM regime is substantive and

must be applied in federal court.  Uchal was therefore required to provide Schmigel
with notice before he had a right to dismiss this action, and his failure to do so
requires reinstatement of this action in the District Court.").  Medical Defendants
did not provide any notice of their intent to seek dismissal prior to filing the motion
to dismiss, so we must deny their argument for dismissal without prejudice.[4]
Schmigel, 800 F.3d at 124; accord Sutton v. Noel, No. 1:19-CV-2080, 2021 WL
4860772, at *6 (M.D. Pa. Oct. 19, 2021).

### B.   Dellaria's Claims Against Medical Defendants Are Untimely

We next address Medical Defendants' argument that the statute of limitations
for Dellaria's claims has run.  Running of the statute of limitations is an affirmative
defense, but defendants may raise the defense in a motion to dismiss if the defense
is apparent from the face of the complaint.  Wisniewski v. Fisher, 857 F.3d 152, 157
(3d Cir. 2017).  The statute of limitations applicable to both Dellaria's Section 1983
claim and his medical malpractice claim is two years.  See id.; 42 Pa.C.S. § 5524.

---

[4] A panel of the Third Circuit has suggested in a recent unpublished opinion
that the notice required by Rule 1042.7 may be satisfied by the filing of a motion to
dismiss.  See Folk v. Bureau of Prisons, No. 21-1543, 2021 WL 3521143, at *2 (3d Cir.
Aug. 11, 2021) ("Folk did not file a certificate of merit ("COM") or claim that a COM
was unnecessary, as required by Pennsylvania Rule of Civil Procedure 1042.3,
despite receiving ample notice about the requirement in Dr. Ball's motion to
dismiss."), *petition for writ of certiorari filed*, No. 21-7861 (U.S. Apr. 6, 2022).  We
construe Schmigel as reaching the opposite conclusion.  See Schmigel, 800 F.3d at
124 (noting that defendant must provide thirty days' notice "*prior to seeking
dismissal*" (emphasis added)).  Hence, we follow the controlling precedent of
Schmigel and conclude that Medical Defendants needed to provide thirty days'
notice prior to seeking dismissal for Dellaria's failure to file a certificate of merit.

We agree with Medical Defendants that Dellaria's claims are untimely under the two-year statute of limitations. The two-year limitations period began to run, at the latest, on April 23, 2019, which was the last date on which Medical Defendants provided any treatment to Dellaria or had any contact with him. (See Doc. 9 at 23). To comply with this limitations period, Dellaria needed to bring his claim no later than April 23, 2021. He did not file the complaint that initiated this case, however, until October 4, 2021, nearly six months after the expiration of the limitations period. Thus, the complaint is untimely.

Dellaria acknowledges that he did not file this case within the applicable limitations period, but he asserts that the statute of limitations should be equitably tolled because of the COVID-19 pandemic. (Doc. 25 at 23). Dellaria notes that SCI-Camp Hill went into lockdown on March 13, 2020 due to the pandemic and that inmates in the prison were not allowed to go to the prison's law library until August 2021, when they were allowed to resume law library visits in groups of 4. (Id.) Given that the prison had 2,200 inmates at the time, Dellaria asserts that it "took time" for all of the inmates to be given access to the law library and that it "could be months" before an inmate was able to get into the law library after visits were reinstated. (Id.) This limit on Dellaria's access to the law library was an "extraordinary circumstance" that allegedly prevented him from timely filing his complaint. (Id.) Dellaria also asserts that he and other inmates in the prison were given limited access to news from outside the prison and that the news they did see stated that "all courts in Pennsylvania were closed except for serious matters." (Id.

at 24).  Dellaria asserts that "[d]ue diligence was use[d] and every attempt was made to file on time."  (Id.)

The question of whether the statute of limitations should be tolled with respect to Dellaria's Section 1983 claim is governed by state law unless it conflicts with applicable federal law.  Pearson v. Sec'y Dept. of Corrs., 775 F.3d 598, 602 (3d Cir. 2015).  Pennsylvania law allows a statute of limitations to be equitably tolled "when a party, through no fault of its own, is unable to assert its right in a timely manner."  Nicole B. v. Sch. Dist. of Phila., 237 A.3d 986, 995 (Pa. 2020) (citing DaimlerChrysler Corp. v. Commonwealth, 885 A.2d 117, 119 n.5 (Pa. Commw. Ct. 2005)).  Courts considering whether a limitations period should be equitably tolled must consider the interests of both the party seeking tolling and the opposing party. Id.  The COVID-19 pandemic may be an appropriate basis for equitable tolling, but the party seeking equitable tolling of the limitations period must "connect the pandemic to his specific situation."  Lewis v. Postmaster Gen. of United States, No. 2958, 2022 WL 109007, at *2 (3d Cir. Jan. 12, 2022) (nonprecedential).[5]

Having reviewed Dellaria's argument, we will deny his request for equitable tolling of the limitations period.  Specifically, we are unpersuaded by Dellaria's assertion that "[i]t could be months" before an inmate was able to access the law library once the prison began allowing inmates back into the law library in August 2021.  Dellaria does not assert that he personally was unable to access the law

---

[5] The court acknowledges that nonprecedential decisions are not binding upon federal district courts. Citations to nonprecedential decisions reflect that the court has carefully considered and is persuaded by the panel's *ratio decidendi*.

library for months after August 2021; he merely asserts that it could take months for

some inmate in the prison to be given access to the law library.  (See Doc. 25 at 23).

In sum, the amended complaint is devoid of any connection between *Dellaria's*

denial of library access and his untimely filing of the complaint in this matter.[6]  We

will therefore reject Dellaria's request for equitable tolling of the limitations period

and dismiss the claims against the Medical Defendants as untimely.

### C.    The Amended Complaint Alleges Action Under Color of State Law

Medical Defendants argue that Dellaria's deliberate indifference claim should

be dismissed for failure to state a claim upon which relief may be granted because

he has failed to allege that Medical Defendants acted under color of state law.  To

establish a constitutional violation under Section 1983, a plaintiff must show that

the defendants' actions were done under color of state law, or, in other words, that

the defendants' alleged misconduct involved "state action."  Sprauve v. West Indian

Co., Ltd., 799 F.3d 226, 229 (3d Cir. 2015).  Actions by private individuals may

constitute state action if "there is such a 'close nexus between the State and the

challenged action' that seemingly private behavior 'may be fairly treated as that of

the State itself.'"  Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n, 531 U.S.

---

[6] Dellaria's assertion that the court was closed for several months during the
pandemic is simply inaccurate.  We take judicial notice of the fact that this court
and all other courts in this district have continued to conduct business throughout
the entirety of the COVID-19 pandemic.
    The continuing violations doctrine also does not apply to this case.  Plaintiffs
have the burden to establish that the doctrine applies, see Cowell v. Palmer Twp.,
263 F.3d 286, 292 (3d Cir. 2001), and Dellaria has not made any argument to that
effect.  (See Docs. 25, 31-32).

288, 295 (2001) (quoting <u>Jackson v. Metro. Edison Co.</u>, 419 U.S. 345, 351 (1974)).  The

Third Circuit has identified three tests that may be used to identify whether private

action may be treated as state action:

> (1) whether the private entity has exercised powers that are
> traditionally the exclusive prerogative of the state; (2) whether the
> private party has acted with the help of or in concert with state
> officials; and (3) whether the state has so far insinuated itself into a
> position of interdependence with the acting party that it must be
> recognized as a joint participant in the challenged activity.

<u>Borrell v. Bloomsburg Univ.</u>, 870 F.3d 154, 160 (3d Cir. 2017).

We find that Dellaria has sufficiently alleged that Medical Defendants were

acting under color of state law.  The amended complaint alleges that Medical

Defendants provided medical care to Dellaria through referrals from the prison in

which he was incarcerated.  The provision of medical care to an incarcerated

individual is the exclusive prerogative of the state.  <u>See</u> <u>West v. Atkins</u>, 487 U.S. 42,

54 (1988) ("'An inmate must rely on prison authorities to treat his medical needs; if

the authorities fail to do so, those needs will not be met.' . . . [T]he State has a

constitutional obligation, under the Eighth Amendment, to provide adequate

medical care to those whom it has incarcerated." (quoting <u>Estelle</u>, 429 U.S. at 106)).

Thus, Medical Defendants' actions may fairly be attributed to the state because they

exercised powers that are traditionally the exclusive prerogative of the state.  <u>See</u>

<u>id.</u>; <u>see also</u> <u>Tenon v. Deibelbis</u>, No. 1:12-CV-1278, 2017 WL 1344643, at *9-10 (M.D.

Pa. Apr. 12, 2017) (concluding that private physician who provided one-time

consultation to prison medical professionals regarding prisoner plaintiff's

healthcare acted under color of state law).  <u>But see</u> <u>Hayward v. Hershey Med. Ctr.</u>,

No. 1:16-CV-2555, 2018 WL 447326, at *3 (M.D. Pa. Jan. 17, 2018) (concluding that private hospital that provided medical treatment to prisoner plaintiff through referral from prison did not act under color of state law).

### D. The Amended Complaint Does Not Allege DOC Defendants' Personal Involvement

DOC Defendants argue that the claims against them should be dismissed for failure to allege their personal involvement. We agree. A defendant cannot be liable for a violation of a plaintiff's civil rights unless the defendant was personally involved in the violation. Jutrowski v. Twp. of Riverdale, 904 F.3d 280, 289 (3d Cir. 2018). The defendant's personal involvement cannot be based solely on a theory of *respondeat superior*. Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988). Rather, for a supervisor to be liable for the actions of a subordinate, there must be evidence of personal direction or actual knowledge and acquiescence. Id. A defendant's review and denial of a prisoner's grievance is not sufficient to establish the defendant's personal involvement in an underlying violation of the prisoner's constitutional rights. Dooley v. Wetzel, 957 F.3d 366, 374 (3d Cir. 2020).

Here, there is no allegation that any of the DOC Defendants were personally involved in Dellaria's allegedly deficient medical care. Rather, Dellaria appears to bring claims against the DOC Defendants based solely on their review of his grievances and their roles as supervisory officials in SCI-Camp Hill, neither of which is sufficient to allege the DOC Defendants' personal involvement. See Dooley, 957 F.3d at 374; Rode, 845 F.2d at 1207. We will therefore dismiss the claims against the DOC Defendants.

E.     **The Amended Complaint Fails to State a Deliberate Indifference Claim Upon Which Relief May Be Granted**

Finally, we address defendants' arguments that the deliberate indifference claim should be dismissed for failure to state a claim.  To state a claim for deliberate indifference to a serious medical need, a plaintiff must allege "(i) a serious medical need, and (ii) acts or omissions by prison officials that indicate deliberate indifference to that need."  Natale v. Camden Cty. Corr. Facility, 318 F.3d 575, 582 (3d Cir. 2003) (citing Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999)).  A serious medical need is "one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would recognize the necessity for a doctor's attention."  Monmouth Cnty. Corr. Institutional Inmates v. Lanzaro, 834 F.2d 326, 347 (3d Cir. 1987).  In addition, "if unnecessary and wanton infliction of pain results as a consequence of denial or delay in the provision of adequate medical care, the medical need is of the serious nature contemplated by the eighth amendment."  Id. (citation omitted).  A prison official acts with deliberate indifference to an inmate's serious medical needs when he "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."  Farmer v. Brennan, 511 U.S. 825, 837 (1994).

Negligence by defendants is not sufficient to establish deliberate indifference to a serious medical need.  Id. at 835.  "Where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are

generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." Palakovic v. Wetzel, 854 F.3d 209, 228 (3d Cir. 2017) (quoting United States ex rel. Walker v. Fayette County, 599 F.2d 573, 575 n.2 (3d Cir. 1979)). A negligent failure to diagnose a medical condition does not rise to the level of deliberate indifference. Farmer, 511 U.S. at 835.

The allegation that Dellaria had a cyst in his left eye that subsequently burst is sufficient to allege a serious medical need. The amended complaint fails, however, to allege that defendants were deliberately indifferent to that medical need. Based on the allegations in the complaint, it appears that defendants diligently treated Dellaria's left eye in an attempt to correct his medical issues. Defendants provided care to Dellaria on numerous occasions, including multiple appointments with Bryden, multiple appointments with a physician's assistant in the prison, two surgeries performed by Neely and Pantanelli, and numerous follow-up visits by Neely, Pantanelli, and Bryden. (See Doc. 9 at 3-11, 14, 17, 19, 23). Defendants also prescribed several medications to Dellaria to treat the conditions in his eye, performed several tests on the eye, and prescribed him new glasses. (Id. at 4-5, 9-10, 14). The amended complaint alleges that defendants initially failed to diagnose Dellaria's cyst, but this allegation at most amounts to an allegation that defendants were negligent, which is insufficient to allege deliberate indifference. See Farmer, 511 U.S. at 835. The amended complaint therefore does not state a deliberate indifference claim upon which relief may be granted.

### F.     Leave to Amend Will be Granted

Before dismissing a civil rights complaint for failure to state a claim upon which relief may be granted, a district court must permit a curative amendment unless the amendment would be inequitable or futile.  <u>Phillips</u>, 515 F.3d at 245.  We find that further leave to amend would be neither inequitable nor futile.  Dellaria's failure to state a deliberate indifference claim upon which relief may be granted and failure to allege DOC Defendants' personal involvement are factual, rather than legal deficiencies, and the untimeliness of his claims could be cured if Dellaria could demonstrate a clearer connection between the denial of library access and the late filing of his complaint.  Hence, we will grant Dellaria leave to file a second amended complaint.

## IV.   <u>Conclusion</u>

We will grant the motions to dismiss, dismiss the amended complaint without prejudice, and grant Dellaria leave to file a second amended complaint.  An appropriate order shall issue.

/S/ C<span style="font-variant:small-caps">HRISTOPHER</span> C. C<span style="font-variant:small-caps">ONNER</span>
Christopher C. Conner
United States District Judge
Middle District of Pennsylvania

Dated:     June 1, 2022